*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PLUME, Minors.

UNPUBLISHED
December 29, 2020

No. 352304
Cheboygan Circuit Court
Family Division
LC No. 18-008685-NA

Before: SWARTZLE, P.J., and BECKERING and GLEICHER, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor children, DP, AP, and NP, under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (c)(*ii*) (other conditions continue to exist), and (j) (reasonable likelihood of harm if returned to parent).[1] We affirm.

## I. BASIC FACTS

In February 2018, the Department of Health and Human Services (DHHS) filed a petition requesting the children's removal from their parents. DHHS alleged that the family had been involved with Children's Protective Services (CPS) since July 2017 because of allegations of physical abuse to the children and unsanitary home conditions. The allegations indicated that respondents had failed to complete in-home parenting education, and there were incidents of domestic violence in the home. NP was failing to thrive and had missed various doctor's appointments, and AP had also missed several appointments. Finally, respondent and the children left the home and it was unknown if the children were safe. DHHS expressed concern that the family's unstable living conditions placed the children at risk of imminent harm.

The children were placed with their paternal grandparents, where they remained throughout the proceedings. After reaching an agreement through mediation, respondent agreed to participate

---

[1] The parental rights of the children's father were also terminated during the pendency of this case. However, he is not a party to this appeal.

voluntarily in a case services plan. She subsequently entered an admission plea to allegations that she lived in unstable housing and that NP was diagnosed with failure to thrive. Subsequently, the trial court ordered her to participate in several services, including a psychological evaluation, counseling, and parenting classes. Psychological evaluations revealed that she had adjustment reaction with anxious features, a dependent personality disorder with avoidant features, a borderline I.Q., poor working memory, and mathematical disorder. It was recommended that respondent attend parenting classes and attend individual therapy to address dependency and respondent's association with people who are dangerous to her and the children.

Over the next 15 months, respondent showed progress with her parenting skills, but it does not appear from the record that she ever progressed to unsupervised visitations. Despite participating in several services, concerns remained about whether she was able to handle all the children on her own. Further, there were significant concerns with respondent's ability to keep her home sanitary and safe for the children. Despite attempts to have respondent utilize white boards, chore charts, and alarms to remind herself to clean the home, respondent was unable to show consistency in this area, and while the home was appropriate at times, on several occasions, caseworkers and the Northern Family Intervention Services (NFIS) staff found the home to be dirty or to present safety risks to the children. Some of the issues noted included pet urine and feces on the floor, moldy food left on the children's high chair, and garbage that was accessible to the children.

Additionally, respondent failed to address her issues of dependency by failing to engage in the necessary counseling. Instead, respondent stopped attending on more than one occasion and was eventually discharged for her lack of participation. Respondent also engaged in several relationships in quick succession. Eventually, respondent suggested that she had trouble opening up to a male counselor, and she was referred to a new counselor at the Women's Resource Center.

Approximately 15 months after entry of the initial disposition order, DHHS filed a supplemental petition seeking termination of respondent's parental rights. The termination hearing, which entailed testimony from a host of witnesses, lasted six days over the course of several months and resulted in the trial court's decision to terminate respondent's parental rights to the children.

## II. REASONABLE EFFORTS AND STATUTORY GROUNDS

Respondent first argues that the trial court erred by concluding that DHHS had made reasonable efforts to reunify the family and that termination of respondent's parental rights was supported by clear and convincing evidence. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's factual findings and findings that a ground for termination has been established are reviewed for clear error. MCR 3.977(K); *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). Likewise, the issue of whether petitioner made reasonable efforts to preserve and reunify the family is generally reviewed for clear error. See *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005).

"A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

DHHS has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights. MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Our Supreme Court has explained that " '[r]easonable efforts to reunify the child and the family must be made in *all* cases' except those involving aggravated circumstances . . . ." *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010), quoting MCL 712A.19a(2). Reasonable efforts begin with the creation of a case service plan aimed at rectifying the conditions that caused the child's removal. *Fried*, 266 Mich App at 542; see also MCL 712A.18f(3)(d) (stating that the service plan shall include a "[s]chedule of services to be provided to the parent . . . to facilitate the child's return to his or her home"). Thereafter, "[a trial] court is not required to terminate parental rights if the State has not provided to the family of the child . . . such services as the State deems necessary for the safe return of the child to the child's home." *In re Rood*, 483 Mich 73, 104; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). In other words, "[t]he adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *Id.* at 89. Importantly, however, "[w]hile [DHHS] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of the respondent[] to participate in the services that are offered" and "demonstrate that [he or she] sufficiently benefited from the services provided." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). To successfully claim a lack of reasonable efforts, a respondent must establish that he or she would have fared better if DHHS had offered other services. *Fried*, 266 Mich App at 543.

Respondent argues that DHHS failed to provide "reasonably-accommodated, intensive services" that addressed the issue of cleanliness in the home. Respondent also cites *In re Hicks*, 500 Mich 79; 893 NW2d 637 (2017), for the proposition that she should be granted additional time to benefit from services due to her disability. This argument is unavailing.

It is important to note that under *Hicks*, DHHS is required to reasonably accommodate a parent's disabilities under the Americans with Disabilities Act (ADA) in its reunification efforts before termination. See *id*. at 85, 90. The ADA defines "disability" in relevant part as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual." 28 CFR 35.108(a)(1)(*i*). In this case, respondent testified that she received disability benefits because she was diagnosed as "high-functioning learning impaired." However, throughout the lower court case and on appeal, respondent fails to explain how her learning disability limited her ability to clean her home. Further, the record supports a conclusion that respondent's individual needs were considered, she was given repeated feedback about her cleaning practices by various service providers, some of which worked with respondent to create charts, alarms, and other techniques to help her remember to complete these tasks. In many instances, she made improvements based on the feedback received. Moreover, it is clear from the record that respondent had the requisite knowledge and ability to clean the home when she knew there would be visitation at her home, and even when she wished to present photographs to the court showing her home in a clean state. This evidence suggests that respondent's cleanliness issue did not result from a lack of intensive services to demonstrate cleaning techniques, but rather,

respondent's inconsistency in maintaining a clean home. Respondent simply failed to follow through and benefit from the services provided her. More importantly, on appeal respondent has not shown that she would have fared better if appropriate cleaning techniques had been modeled for her. Accordingly, we find no error with the trial court's assessment that DHHS provided reasonable efforts toward reunification with respect to the issue of maintaining sanitary conditions in her home.

In addition, we conclude that the trial court did not clearly err in its finding that clear and convincing evidence established at least one statutory ground for termination of respondent's parental rights. The trial court terminated respondent's rights pursuant to MCL 712A.19b(3)(c), provides in relevant part:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:

> * * *

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (i) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

> (ii) Other conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, respondent entered an admission plea to allegations that she lived in unstable housing and NP was diagnosed with failure to thrive. Thereafter, the dispositional order regarding the children and respondent was entered on June 18, 2018. There is no dispute that 182 days passed between entry of this order and DHHS's filing of the supplemental petition for termination. At the initial disposition, the trial court adopted the recommendations of DHHS that respondent should participate in a psychological evaluation and follow the recommendations, was required to continue treatments she was already receiving at Community Mental Health (CMH) and provide the required releases, would be required to attend a parenting education class, and would be required to continue treatment with her medical providers for prenatal care given her recently reported pregnancy.

Respondent's psychological evaluation resulted in recommendations that respondent obtain I.Q. testing, learn independent living skills, attend parenting classes, and attend individual therapy to address dependency and respondent's association with people who are dangerous to her and the children. While respondent subsequently completed the I.Q. testing and showed progress

-4-

in parenting skills, she does not appear to have advanced to unsupervised parenting. In addition, she failed to show consistency in independent living because she was unable to maintain a safe and sanitary home. Further, at trial, the testimony established that respondent was repeatedly discharged by CMH for failure to participate in services, and while she had started counseling to address her dependency issues with a new counselor just prior to the filing of the petition for termination of her parental rights, her behaviors and acts suggested that she was not practicing what she was learning.[2] Indeed, while respondent reported that she was single, there was evidence that she in fact had engaged in relationships with two different men. It also appears from the record that respondent omitted informing her counselor about her interactions with one of these men. Indeed, the trial court seemingly questioned respondent's credibility in regard to these relationships. Accordingly, "giving due regard to the trial court's special opportunity to observe the witnesses," *BZ*, 264 Mich App at 296-297, we are not persuaded that the court clearly erred by concluding that respondent had not resolved her issues of dependency and association with people who are dangerous to her and the children. Moreover, based on Strauss's testimony that it could take one to two years to address this issue, the trial court did not err by concluding that respondent would not resolve these issues within a reasonable time.

The trial court did not err by concluding that termination of respondent's parental rights was supported by MCL 712A.19b(3)(c)(*ii*). Because only one statutory ground for termination is required, we need not consider additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).[3]

## III. BEST INTERESTS

Respondent also argues that the trial court erred in finding that termination of her parental rights was in the children's best interests. Once again, we disagree.

This Court reviews the trial court's determination of best interests for clear error. *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving

---

[2] To the extent respondent implies that DHHS did not provide reasonable services because it did not test her for literacy, this argument is without merit. Dr. Strauss indicated in his psychological evaluation of respondent that her reading was adequate.

[3] Although only a single statutory ground for termination must be established, for the same reasons, we are also satisfied that there was clear and convincing evidence of the potential of continued harm to the children's physical and mental well-being. See *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011) (recognizing that MCL 712A.19b(3)(j) considers not only the prospect of physical harm, but also the risk of emotional harm to the children). Notably, the conditions of respondent's home continued to pose a potential physical threat to the children, while her inappropriate relationships had the potential to expose them to substance abuse, domestic violence, or more dangerous situations. Moreover, respondent's failure to comply with the terms and conditions of her case service plan is evidence that the children would be harmed if returned to respondent's home. *White*, 303 Mich App at 711.

due regard to the trial court's special opportunity to observe the witnesses." *BZ*, 264 Mich App at 296-297.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *Olive/Metts*, 297 Mich App at 40. When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

The trial court should weigh all of the available evidence to determine the child's best interests." *White*, 303 Mich App at 713. The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors the trial court can consider include the parent's compliance with the service plan and the parent's visitation history. *White*, 303 Mich App at 713-714.

In this case, it is undisputed that the children were bonded to respondent. However, as noted above, the parent-child bond is only one factor for the trial court to consider. See *Olive/Metts*, 297 Mich App at 41. Importantly, the trial court noted that the children's grandparents had served as foster parents and provided for all of the children's needs for the pendency of the case, and it was unclear if the children's needs would be met if returned to respondent. The court also felt that the children were safe with the grandparents, but believed respondent's repeated relationships with "questionable characters" that were "unfit to be around [the] children" weighed in favor of termination of respondent's' parental rights.

Respondent also posits that the evidence indicating she was able to provide an adequately clean home supports a conclusion that her parenting skills were improving, and she would be able to address the barriers to reunification within a reasonable time. However, as noted above, despite significant focus on the condition of the house throughout the case, and the feedback respondent received from several service providers, respondent remained unable to consistently maintain an appropriate home. Indeed, although there were days the home was clean and proper, this was not consistent, and there were significant safety concerns when the home was unclean, such as garbage on the floor and moldy food and drinks that could become hazards to the children. There was also testimony about unsanitary conditions such as pet urine and feces in the home. Indeed, the court was concerned about what would occur if the children were returned and the home was no longer monitored. In whole, while respondent demonstrated an ability to clean the home, we agree with the trial court's assessment that respondent's failure to maintain a safe and clean home weighed in favor of termination of respondent's parental rights.

Respondent also argues that the trial court failed to consider the children's ages. However, this argument is meritless. The record before this Court supports a conclusion that the trial court considered the children's ages and the length of time they had been in foster care when it determined that it was important to provide the children with stability and permanence. Indeed, the trial court noted that the children's need for permanency, stability, and finality after 22 months of foster care weighed in favor of termination of respondent's parental rights. In sum, the trial court weighed various factors before it concluded that termination of respondent's parental rights

was in the children's best interests and entered an order terminating respondent's parental rights. Based on the record before this Court, we are not persuaded that a mistake has been committed.

Affirmed.

/s/ Brock A. Swartzle
/s/ Jane M. Beckering
/s/ Elizabeth L. Gleicher